

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICE OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GREATER ZION MB CHURCH, and the Greater Zion Board of Trustees, collectively and individual they are Reverend Dwight Wesley, President of The Board of Trustees, Kevin Wesley, Sr, Eugene Wilkerson, Renee Thorton, and Lillie Wesley | 08CV3650 JUDGE CASTILLO MAGISTRATE JUDGE VALDEZ ~~Magistrate Judge~~ |
| Plaintiff | |
| and | Case No. |
| Lemuel Davis, Tom Miller, William Morgan, Honorable Judge Donnesburger, and CHARTER ONE BANK | JURY TRIAL DEMANDED |
| Defendant | |

**FILED**
JUN 2 6 2008 TC
Jun 26.2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**NOW COMES** Plaintiff, Greater Zion Missionary Baptist Church, an Illinois Not-For-Profit Corporation (hereinafter "Greater Zion"), Reverend Dwight Wesley, President of the Board of Trustee, and the members of the Greater Zion Board of Trustees: Kevin Wesley, Sr, Eugene Wilkerson, Renee Thorton, and Lillie Wesley, and through its attorney, Mecca Thompson of Law Office of Mecca Thompson and for its Complaint for violation of First Amendment Freedom of Religion, Fifth Amendment Due Process, bank fraud regarding corporate account, Unauthorized Assumption of Corporate Authority, and states as follows:

## PARTIES

1. Plaintiff, Greater Zion is a Illinois Not-For-Profit Corporation established in accordance with the Illinois Not-For-Profit Act with its principal place of business located on 1501 N. Fairfield Street Chicago, Illinois 60622. Greater Zion is engaged in the congregational worship of God and the proliferation of the Baptist Faith and the Christian Gospel according to the word of God as codified in the King James version of the Holy Bible, and the tenants, rituals, and practice of the Baptist Faith.

2. Upon information and belief, Defendant, Tom Miller is an individual and resident of the state of Illinois. Tom Miller resides at 914 Worcester Ave. Westchester, IL 60154.

3. Upon information and belief, Defendant, William Morgan is an individual and residents of the state of Illinois. William Morgan residence is yet unknown.

4. Upon information and belief, Defendant, Lemuel Davis is an individuals and resident of the state of Illinois. Lemuel Davis resides at 204 North Laramie Chicago, IL 60644.

5. Defendant, Charter One Bank is the Bank that is currently holding over $50,000 in an account in the name of Greater Zion.

## JURISDICTION

6. This Court has This Court has jurisdiction over the parties and this controversy as this is a civil action under the applicable clauses United States Constitution's First, Fifth, and Fourteenth Amendment (U.S. Constitution Amend 1, Amend 5, Amend 14) pertaining to the freedom of religion, association, assembly, and due process and the 5th amendment, jurisdiction being conferred in accordance with 42 _____ and _____ , _____ . In addition, jurisdiction exists where this controversy arises under the applicable clauses of the United State's Constitution's protection against interference with the right to contract.

7. Jurisdiction for the Illinois state claims is conferred in accordance with the principles of supplemental jurisdiction pursuant to _____ in that state law claims form part of the same controversy as the claims arising under the United States Constitution.

8. Venue is proper pursuant to _____ .

9. Upon information and belief, Defendants have committed torts within the State of Illinois Northern District of Illinois. All of the events giving rise herein occurred in the State of Illinois and within the Northern District Defendant's actions are intentional and knowingly directed to Plaintiff for whom Defendant knows to be located in Illinois.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10. The articles of incorporation establishing Greater Zion as not-for-profit corporation organized under the General Not-For-Profit were filed in 1962.

11. The Bylaws governing operations of Greater Zion were filed with the Illinois Department of Revenue in 1987.

2

12. On January 16, 2005 the members of Greater Zion held its annual meeting for the purposes of selecting the officers, deacons, and the Pastor of Greater Zion Missionary Baptist Church. .

13. During that election the Church also passed two resolutions (Greater Zion 1st Res. Ex. 2 & 2nd Res. Ex. 3). The first resolution prohibited any financial transaction or business with third parites without written permission from the Church. The second resolution prohibited anyone from taking any legal action on behalf of the church without written permission from the Church. The results of the election were recorded by the Church Clerk and Secretary Lillie Wesley.

14. On February 15, 2005, Plaintiff Greater Zion Church by its representative Lemuel Davis filed a complaint for preliminary injunction. Plaintiff also filed an emergency motion in support of a preliminary injunction to be issued prior to a hearing on February 18, 2005.

15. On that day, the court issued an order freezing assets held by Charter One Bank in the account #864484055. To date that order has not been lifted. Defendant filed motions to strike and dismiss which were denied.

16. In his answer, the Defendant requested the court to release said funds to Reverend Wesley and the board of Greater Zion Missionary Baptist Church and raised several defenses.

17. On October 4, 2006, Court set the deadline for the close of discovery for November 11, 2006.

18. On December 4-6, 2006, the court held a evidentiary hearing on the question of whether two groups should control operations of Greater Zion Missionary Baptist Church".

19. On December 7, 2006 the Court requested more information from both parties regarding the definition of membership. Both parties submitted responses to said request.

20. On December 11, 2006, the court issued a decision that contained one finding, one abstention, and one directive. The court found that the Plaintiff had failed to meet its burden of proving that bylaws, which the Davis group represented governed Greater Zion, controlled the question at issue. The Court also abstained from rendering a decision as to whether the Wesley's group's bylaws control or whether any of the candidates are actually the board members of the Greater Zion, because Greater Zion, at that time, would be holding another election in January 2007. Thus, the upcoming election would possibly moot those questions.

21. The Court acknowledged that it believed the Plaintiff sought a declaratory judgment. However, the court never explained how the Plaintiff's request was for

3

a declaratory judgment where the complaint was devoid of the words "declaratory judgment" and the signatory could not verify the allegations in a declaratory judgment that never contained the words "declaratory judgment".

22. The court also ordered that Greater Zion membership hold an election of the new board members on January 14, 2007. The court's ordering the election was based in part on its determination that Greater Zion's corporation only authorizes one year terms for the directors, and that the right to control expired once their one year term of office expired.

23. On January 14th just before Sunday service was to begin a group of individuals demanded that the election take place immediately. This faction disrupted Sunday service and the police were called. But after the police removed the faction from the premises, the members of Greater Zion held the election as required by the Court order and in accordance with United States Constitution, the Illinois state constitution, Illinois state law, the teachings and religious practices of the Baptist faith, and proper administrative procedures.

24. Over the objections of the Defendant, the court never considered the evidence presented by the Defendant of the election that took place on January 14, 2007. The court issued another order instituting another election on January 21, 2007 to be supervised by former Judge Donnesburger.

25. To date no order has been issued to invalidate the original order for the January 14, 2008 election. Nor was an order issued to invalidate the directorship status of those elected during the January 14, 2008 election.

26. The Defendant objected to the rules or procedures for the election that were proposed by the court, and the court's decision to use Greater Zion funds to finance the election, and the manner for which the election would be conducted.

27. Pursuant to the order, Judge Donnesburger had sole discretion and control in conducting the election. Judge Donnesburger prepared the ballots and determined the manner in which votes would be classified (good or bad), and determined when the election would end. However, no measure as to whether the participants were actually members was applied as a condition precedent to receiving a ballot. No proof of membership status was required. Only identification of the individual's name was required. Judge Donnesburger compared the names to a list of names that were given to him from the court, and where given to the court by the parties.

28. Individuals who were not members of the corporation were allowed to participate in the election, and whose membership status to date has been questioned and not been proven.

4

29. Judge Donnesburger identified some questionable ballots, however, it is not clear whether those questionable ballots were cast by actual members of the corporation or non-members of the corporation.

30. Neither the laws governing the manner in which corporate elections should be conducted, nor the bylaws were followed in the administration of the election. how the ballots would look, what parties participated in an additional election that was held on January 21, 2007, and former Circuit Court Judge Donnesburger supervised the election.

31. The court authorized procedures for the administration of the election. The Defendant objected to the election, the decision to use Greater Zion funds to finance the election, and the manner for which the election would be conduct. Pursuant to the order the parties participated in an additional election that was held on January 21, 2007, and Judge Donnesburger supervised the election.

32. After the election was held the court explained that it decided to hold the election first and then consider the objections to the election afterward. "As you know, it was my thought that possibly that if we conduct the election, that those objections might be muted [mooted] by an overwhelming vote or however the vote would turn out, but they're not. Those objections haven't been muted [mooted] because the vote was close enough that, you know, we'll have to look into some of those issues," said the Court.

33. Judge Donnesburger submitted a report to the court describing the number of votes cast, procedures he followed in supervising the election, and any problems or irregularities observed with the votes that were case. The court tallied the votes some time before the parties were scheduled to appear in court. There were 108 votes case and 13 ballots had "problems". Only 98 of the 108 total votes were counted. For reasons that are not evident from the transcript, ten of the votes were not included in the tally. According to the Court, the Plaintiff received 55 votes, and the Defendant's candidates received 43.

34. The court then decided that there was one issue which remained and that a sample of the Defendant's challenges to the membership status of some of the voters was the best way to resolve that issue. The court did not apply existing law that governs how not-for-profits should determine membership. The court did not consider the laws authorizing trial to resolve issues arising subsequent to declaratory judgment. The court did not consider the statements it ordered both parties to supply in defining membership.

35. The Court stated that the only issue to resole was whether the people who voted for the Plaintiff were actually members of the Church. Id. Then the court would certify the results. Id. The court decided that the group of challenged ballots would be comprised of voters (hereinafter referred to as the "challenged voters") who voted for Plaintiff and were not on Defendant's list and were not members of

the Davis or Miller family. "I asked Dave this morning, I said I have a list of – what I have on here is a list of numbers. All the ballot – Judge Donnesburger was very helpful and numbered all the ballots. All these are ballots of individuals who voted for the Plaintiffs' Board of Directors, who were challenged as being members by the Defendant, and who are not members of either the Davis or the Miller family, okay, so I excluded all of them. And it still is a list of probably – I didn't really count it. It's a pretty extensive list in numbers." Then he would select 4 individuals from the group as a representative sample of the challenged voters. The four individuals selected were #90 Jermisha Holmes, #56 Rudolph Davis, #43 Devon Johnson, Jr, and #82 Julia Laws. By court order the Plaintiff had the burden of proving that the four individuals were members.

36. No Plaintiff with the exception of Reverend Wesley has been a party to the lawsuit filed in Cook County courts. Reverend Wesley's requests that the claims before the Cook County Court be joined with those arising under this complaint.

37. Plaintiffs have never given Lemuel Davis permission to represent them in any capacity ever.

## COUNT I
## DUE PROCESS
(Fourteenth Amendment of the United States Constitution)

38. Plaintiff hereby incorporate allegations 1-38.

39. Evidence exists to prove one way or the other the membership status of those who participated in the election. Laws exist which govern the matter with which corporations should conduct elections. The corporation's bylaws exists. There is no need to resort to equitable remedies to resolve the matter before the court.

40. To date the Tom Miller and William Morgan have never signed a document filed with any court authorizing Lemuel Davis to represent them in a court of law seeking a declaratory judgment for the right to control Greater Zion. However, their names to go on a ballot and ordered that Greater Zion members participate in the election pursuant to Court order granting Lemuel Davis's request for declaratory judgment. To the best of the Plaintiff's information or belief Lemuel Davis has not held himself out as a representative of current or former Board members.

41. The Cook County Court has not held a trial or hearing on the question of membership status.

42. The Cook County Court has not held a trial on the question of whether the Defendant's right to control has been mooted by the passage of time.

6

43. The Cook County Court has not held a trial on the question of what impact the alleged elected directors right to control will have on the current director's right to control.

44. The election ordered did not afford the Plaintiff procedural protections prior to the institution of the election in violation of the Plaintiff's constitutional rights. The party representing Greater Zion who requested the election did not have authority to act on behalf of Greater Zion.

45. The election ordered did not afford the Plaintiff substantive protections that would have allowed the Plaintiffs to challenge the basis for imposing an election in violation of the Plaintiff's constitutional rights. The party representing Greater Zion who requested the election did not have authority to act on behalf of Greater Zion.

46. Plaintiff requests the imposition of any and all measures that exist under law to prevent the wasteful expenditure of Corporation funds to cover the Defendant's unsubstantiated claims to right to control the corporation or the corporation's assets.

WHEREFORE PLAINTIFF PRAYS FOR THIS HONORABLE COURT TO DO THE FOLLOWING:

A. Join the claims currently before Judge Pantle in Chancery 05 CH 003636 with the claims in this court.
B. Temporarily restrain the Defendants from representing themselves as Greater Zion
C. Grant the Plaintiff a trial on the merits of its claims.
D. Grant the Plaintiff a hearing on the question of imposing a bond to cover the cost of any additional litigation, loss of control of church assets, and operations of the church.
E. In the alternative, order a stay of the matter before the chancery so that the Plaintiff can file proper pleading in the proper venue to have their claims heard.
F. For such other and further relief as seem meet and just.

COUNT II
FREEDOM OF RELIGION
(First Amendment, Fifth, and Fourteenth Amendment of the United States Constitution)

47. Plaintiff incorporates allegations contained in paragraphs 1-38.

48. The manner in which the election was conducted violated my freedom to religion as member of the Baptist faith.

7

49. To the best of the Plaintiff's information or belief, Judge Donnesburger acted pursuant to County Court order and under color of law in supervising the election.

50. Court order allowing a person who is not a member of the Baptist faith discretion in deciding who was eligible to vote for directors who would possess the authority to determine time, place, and manner for which I practice my faith is offensive and a violation of my freedom of religion.

51. Court order allowing a persons who are not and or may not be a member of the Baptist faith to vote for directors who would possess the authority to determine time, place, and manner for which I practice my faith is offensive and a violation of my freedom of religion.

WHEREFORE PLAINTIFF PRAYS FOR THIS HONORABLE COURT TO DO THE FOLLOWING:

A. Join the claims currently before Judge Pantle in Chancery 05 CH 003636 with the claims in this court.
B. Temporarily restrain the Defendants from representing themselves as Greater Zion.
C. Grant the Plaintiff a trial on the merits of its claims.
D. Grant the Plaintiff a hearing on the question of imposing a bond to cover the cost of any additional litigation, loss of control of church assets, and operations of the church.
E. In the alternative, order a stay of the matter before the chancery so that the Plaintiff can file proper pleading in the proper venue to have their claims heard.
F. For such other and further relief as seem meet and just.

## COUNT III
## FREEDOM TO ASSOCIATE
(First Amendment and Fourteenth Amendment of the United States Constitution)

52. Court order allowing persons who are not and or may not be a member of the Baptist faith to vote for directors who would possess the authority to determine time, place, and manner in which the affairs of the corporation operate is violation of my freedom of association.

53. Court order allowing persons who are not and or may not be a member of the Baptist faith to vote for directors who would possess the authority to control the corporation assets is a violation of my freedom of association.

54. Court order allowing persons who are not and or may not be a member of the corporation to vote for directors who would possess the authority to determine time, place, and manner in which the affairs of the corporation operate is violation of my freedom of association.

8

55. Court order allowing persons who are not and or may not be a member of the corporation to vote for directors who would possess the authority to control the corporation assets is a violation of my freedom of association.

56. Sufficient evidence exists to show that any interest opposing a trial by jury on the question of membership does not outweigh the interest in preventing erroneous deprivation of liberty to associate with only true members of the corporation and true members of the faith.

WHEREFORE PLAINTIFF PRAYS FOR THIS HONORABLE COURT TO DO THE FOLLOWING:

A. Join the claims currently before Judge Pantle in Chancery 05 CH 003636 with the claims in this court.
B. Temporarily restrain the Defendants from representing themselves as Greater Zion
C. Grant the Plaintiff a trial on the merits of its claims.
D. Grant the Plaintiff a hearing on the question of imposing a bond to cover the cost of any additional litigation, loss of control of church assets, and operations of the church.
E. In the alternative, order a stay of the matter before the chancery so that the Plaintiff can file proper pleading in the proper venue to have their claims heard.
F. For such other and further relief as seem meet and just.

## COUNT IV
## UNAUTHORIZED ASSUMPTION OF CORPORATE AUTHORITY
### (805 ILSC 105/103.20)

57. Plaintiff incorporates allegations contained in paragraphs 1-38.

58. The Defendants conduct in seeking legal action is a violation of the resolution that were passed by the members of the corporation in 2005.

59. Regardless of whether the Defendants were members of the Board of Directors in 2005 or today, they did not obtain written permission from the corporation prior to the institution of the legal action filed with the Cook County Court. This resolution was passed by the members and remains in force today.

60. Regardless of whether the Defendants were actually elected in 2005, they did not have the authority to retain legal counsel or to transact business. Their efforts to gain control over the corporate assets or to gain control over the operation of the church was a violation of the resolution that was passed by the members. This resolution remains in force today.

61. No court has rendered a decision as to whether the disbursement of corporate funds to finance the 2007 court ordered election violated the resolution to seek written approval before authorizing a transaction on behalf of the Church.

WHEREFORE PLAINTIFF PRAYS FOR THIS HONORABLE COURT TO DO THE FOLLOWING:
A. Join the claims currently before Judge Pantle in Chancery 05 CH 003636 with the claims in this court. Join the claims currently before Judge Pantle in Chancery 05 CH 003636 with the claims in this court.
B. Temporarily restrain the Defendants from representing themselves as Greater Zion.
C. Grant the Plaintiff a trial on the merits of its claims.
D. Grant the Plaintiff a hearing on the question of imposing a bond to cover the cost of any additional litigation, loss of control of church assets, and operations of the church.
E. In the alternative, order a stay of the matter before the chancery so that the Plaintiff can file proper pleading in the proper venue to have their claims heard.
F. For such other and further relief as seem meet and just.

## COUNT V
## UNAUTHORIZED AGENT
(Tortious Act arising from Agency Principles)

62. To the extent that the Lemuel Davis has held himself out as the representative of the Board of Directors, the Plaintiff's assert that he has acted without authority to do so.

WHEREFORE PLAINTIFF PRAYS FOR THIS HONORABLE COURT TO DO THE FOLLOWING:
A. Join the claims currently before Judge Pantle in Chancery 05 CH 003636 with the claims in this court.
B. Temporarily restrain the Defendants from representing themselves as Greater Zion.
C. Grant the Plaintiff a trial on the merits of its claims.
D. Grant the Plaintiff a hearing on the question of imposing a bond to cover the cost of any additional litigation, loss of control of church assets, and operations of the church.
E. In the alternative, order a stay of the matter before the chancery so that the Plaintiff can file proper pleading in the proper venue to have their claims heard.
F. For such other and further relief as seem meet and just.

*Mecca Thompson*
Attorney Thompson (Attorney Bar #6282173)
Attorney for Plaintiffs
Law Office of Mecca Thompson
5424 West Madison
Chicago, IL 60644
(312) 361-0449

10